*446 OPINION OF THE COURT
Joseph Harris, J.
THE ISSUE
Having lost the initial legal skirmish on the issue of standing (see, 169 Misc 2d 906 [Sup Ct, Albany County 1996]), respondents now interpose objections in point of law, alleging that the proceeding does not present a justiciable controversy and that the petition fails to state a cause of action. The court, pursuant to CPLR 3211 (c) and 3212 (b), has converted this motion to a reciprocal motion for summary judgment.
Cigarette consumers in New York are subject to a State tax of 56 cents per pack. Enrolled tribal members who purchase cigarettes on Indian reservations are exempt from this tax, but non-Indians making purchases on reservations must pay it. To prevent non-Indians from escaping the tax, New York has enacted a regulatory scheme that imposes record-keeping requirements and quantity limitations on cigarette wholesalers who sell untaxed cigarettes to reservation Indians. This regulatory scheme was approved by the United States Supreme Court in Department of Taxation & Fin. v Milhelm Attea & Bros. (512 US 61 [1994]), but has never been implemented by the State of New York.[1]
A similar regulatory scheme has been devised by respondents respecting sale on Indian reservations by Indian retailers to non-Indian consumers for collection of motor fuel excise and sales taxes; neither has this regulatory scheme been implemented.
THE LAW MANDAMUS
The thrust of respondents’ argument is that this proceeding presents a "unique, complex and highly sensitive situation [which makes this a case where both in terms of legal analysis and as a practical matter, there is no clear dividing line which can be drawn between collection and enforcement of the subject taxes and the means or manner by which that collection and enforcement is carried out].”[2]
In the instant proceeding, petitioners seek by way of mandamus a judgment compelling respondents to determine, *447 assess, collect and enforce New York State cigarette and motor fuel taxes pertaining to on-reservation sales of cigarettes and motor fuel by Indian retailers to non-Indian consumers. Citing articles 12-A, 20, and 28 of the Tax Law and 20 NYCRR parts 336 and 414, petitioners allege that the on-reservation Indian retailers have failed to collect these taxes from non-Indian purchasers and turn them over to the State of New York, and that the State has failed to enforce the statutory provisions and regulations pertaining to the collection by on-reservation Indians from sales to on-reservation non-Indians and payment of same over to the authorities of the State.
Petitioners, individual and associations of off-reservation non-Indian retailers, claim that the failure to enforce the subject tax laws and regulations has caused them and other non-Indian retailers economic injury by diminishing their ability to compete with on-reservation Indian retailers, depriving petitioners of their constitutional rights to due process and equal protection of the laws.
To the argument of respondents that the controversy here is nonjusticiable because of the "uniqueness and complexity of the present situation”;[3] that enforcement of the regulations presents complex political issues best left to the executive and legislative branches of government and that petitioners seek to have the court interject itself into a complex area of policy making involving the exercise of judgment and discretion on the part of officers of the executive branch of State government, the reply is threefold: (1) the controversy is neither unique nor complex; (2) petitioners seek only to compel respondents to perform their mandatory, statutory and regulatory obligations to implement and enforce all tobacco and motor fuel excise and sales taxes applicable to purchases of tobacco and motor fuel, by non-Indians from on-reservation Indian retailers; the method by which respondents are to enforce these laws is not the subject of this proceeding; (3) by enacting articles 12-A, 20 and 28 of the Tax Law, the Legislature has already presumably examined all issues involved, including complex political issues, and expressly declared its policy in this matter; by promulgating 20 NYCRR parts 336 and 414, the executive branch has done the same on its part; and the United States Supreme Court in Department of Taxation & Fin. v Milhelm Attea & Bros. (512 US 61, supra) has approved said regulations. All that remains is enforcement.
*448 Ninety years ago, the Court of Appeals in People ex rel. Schau v McWilliams (185 NY 92, 100 [1906]) declared: "The general principle that mandamus will lie against an administrative officer only to compel him to perform a legal duty, and not to direct how he shall perform that duty when the manner of performance is in his discretion, is not a valid objection to the use of that remedy”.
In Klostermann v Cuomo (61 NY2d 525, 530 [1984]), where petitioners were present and former mental patients seeking declaratory relief and mandamus to enforce certain legislatively mandated programs, the Court of Appeals unequivocally held that petitioners’ "claims do not present a nonjusticiable controversy merely because the activity contemplated on the State’s part may be complex and rife with the exercise of discretion”. And further: "[I]f a statutory directive is mandatory, not precatory, it is within the courts’ competence to ascertain whether an administrative agency has satisfied the duty that has been imposed on it by the Legislature and, if it has not, to direct that the agency proceed forthwith to do so.” (Supra, at 531.)
As in Matter of Natural Resources Defense Council v New York City Dept. of Sanitation (83 NY2d 215, 221 [1994]), "granting petitioners the relief they seek here would not involve the courts in resolving political questions or making broad policy choices on complex societal and governmental issues, involving the ordering of priorities”. Petitioners in the instant case "are not seeking any change in legislative policy or reordering of priorities”, but only the implementation of the tax statutes as enacted by the Legislature and the pertinent Tax Department regulations.[4]
Matter of Campbell Oil Co. v Chu (127 Misc 2d 281 [Sup Ct, Albany County 1985]) presented a case factually similar to the case at bar. An independent distributor of petroleum products and owner of gas stations and convenience stores sought the enforcement of taxes due upon the sale of motor fuel and cigarettes pursuant to articles 12-A and 28 of the Tax Law. *449 Wrote the court, as is the case here, the petition "before the court is not to oversee the method by which respondent undertakes to enforce the tax laws, but merely to compel him to recognize, accept and perform mandatory duties imposed upon his office by law” (supra, at 283).
In Heard v Cuomo (150 Misc 2d 257, 263 [Sup Ct, NY County 1991]), the court held that if a governmental agency has failed to satisfy a mandatory duty "it is appropriate for this court to direct compliance.” And in Matter of Charles v Diamond (42 AD2d 232, 235 [4th Dept 1973]), then-Justice Richard Simons stated: "If indeed the respondents have no justification for failing to perform the legal duties imposed upon them, then the court should supply the necessary kinetic energy to resolve the problem and order performance.”
Finally, the eminent commentator on matters of New York practice, Professor David Siegel, succinctly summed up the guiding principle when he noted that "the fact that exercises of discretion lie along the way does not prevent the courts from making sure the department takes the trip.” (Siegel, NY Prac § 558, 1996 Pocket Part, at 93.)
It was upon these precedents that this court was propelled in its previous decision and order on the issue of standing, dated May 14, 1996, by way of dictum, but in anticipation of the arguments now raised by respondents, to declare: "Neither difficulty of execution nor fear of violence can elevate the power of respondents over the Legislature with respect to the substantive mandates of the statute, nor enhance the authority of the Department of Taxation and Finance by inaction to grant additional exemptions.” (Matter of New York Assn. of Convenience Stores v Urbach, 169 Misc 2d 906, 916, supra.)
SUMMARY JUDGMENT
Patience may be a virtue, but from Genesis to the fulfillment of the Apocalypse, or the coming of the Messiah, is too long a period of time to have to wait for an administrative agency to comply with its duty to enforce the law and for petitioners to receive their constitutional rights to due process and equal protection of the laws.
The regulations involved herein were promulgated in 1988 and upheld by the decision of the United States Supreme Court in 1994 in Department of Taxation & Fin. v Milhelm Attea & Bros. (512 US 61, supra). The three affidavits attached to respondents’ answer show that respondents and other New *450 York governmental agencies have been dealing with Indian relations and concerns for Indian sovereignty for at least 19 years.[5] It is that understandable concern that is responsible for the intricacies of the subject regulations which allow Indian traders on their reservations to sell tobacco products and motor fuel to Indian customers tax free. But such concern appears inapplicable to such sales to non-Indians.[6]
The court is mindful of the sovereign concerns of Indians on their reservations.
The court is further mindful of the need of the State of New York for tax money. But the court is also concerned for the *451 constitutional rights of petitioners, and others similarly situated, to due process and equal protection of the laws.
There are no issues of fact to be resolved. Unless some "kinetic energy” (Matter of Charles v Diamond, supra, at 235) is infused into respondents, Tax Law articles 12-A, 20 and 28, and their implementing regulations will remain unenforced until after the coming of the Messiah.
The failure to enforce the tax laws against some to whom they apply, to the detriment of others, is unconstitutional. The unconstitutionality lies not on the face of the statute but in its unequal enforcement. Such is the meaning of the doctrine, "a government of laws”.[7]
For these reasons the motion by respondents to dismiss the petition and for summary judgment is denied and the motion by petitioners for summary judgment is granted under the following conditions.
Respondents request that in the event this court finds in favor of the petitioners, execution of the court’s order directing equal implementation of enforcement of the provisions of articles 12-A, 20 and 28 of the Tax Law, and the implementation of the regulations approved by the United States Supreme Court in Milhelm Attea & Bros, (supra) — namely 20 NYCRR parts 336 and 414 — be stayed for a period of up to 120 days from the date of said order. This appears reasonable.[8]
CONCLUSION
Accordingly, the court orders equal implementation and enforcement of the provisions of Tax Law articles 12-A, 20 and 28 respecting sales of tobacco products and motor fuel by Indians to non-Indian retail consumers on Indian reservations and the regulations promulgated pursuant thereto — namely 20 NYCRR parts 336 and 414; the execution of this order shall be stayed for up to 120 days from the signing of said order; if, on and after said 120 days, said Tax Law and regulations are not equally implemented and enforced against all to whom articles 12-A, 20 and 28 are applicable, the order shall, upon application of the petitioners on five days’ notice to respondents, go into full force and effect and no tobacco products and/or motor fuel shall thenceforth be permitted by the State of New York *452 to be introduced into Indian reservations in New York State, except that quantity demonstrably necessary for ultimate sale on said reservations to Indians,[9] or in the alternative, if such order is impractical and is not implemented, then the collection by the State of New York of the excise and sales taxes called for by articles 12-A, 20 and 28 respecting tobacco products and motor fuel shall be suspended; respondents may apply to this court, on three days’ notice to petitioner, for any reasonable modification of this order that will accomplish the same end intended by the court — namely, equal implementation and enforcement of the Tax Law and preservation of the rights of petitioners, and all others similarly situated, to due process and equal protection of the laws.
It may be that reservation Indians, despite the decision of the Unites States Supreme Court in Milhelm Attea & Bros, (supra), upholding respondents’ current regulations, may still resist the implementation of these regulations. Then respondents must decide whether or not to assert their own sovereignty, or in the alternative change the thrust of their enforcement procedures to controlling the activities of off-reservation non-Indians who enter Indian reservations for the purpose of evading cigarette and motor fuel taxes, by establishing a system of customs controls such as exists at the Canadian border.[10]
Thirteen other States have entered into tax compacts with Indian Nations and tribes located within their borders. Under such agreements, Indian Nations and tribes agree to ensure tax parity, thereby leveling the playing field for businesses on and off reservations. The Indian Nations and tribes typically agree to split the tax revenue with the State according to a formula within the compact.
In any event the system adopted by respondents for equal enforcement of Tax Law articles 12-A, 20 and 28 shall be up to them, provided that within 120 days from the entry and service of the order entered herein, such Tax Law and the regulations promulgated pursuant thereto shall be fully and effectively and equally enforced; otherwise such Tax Law— namely, articles 12-A, 20 and 28 — shall be suspended.
*453 In order to conserve, legal resources, and to minimize inconsistencies in other litigation respecting the same subject matter as involved herein, all such other litigation shall be consolidated with this case, under the jurisdiction of the Justice to whom this case is assigned.

. Unlawful purchases of unstamped cigarettes deprive New York of more than $65 million per year. (Department of Taxation & Fin. v Milhelm Attea & Bros., 512 US 61, 65, supra.)

. Footnote omitted for space considerations.

. Respondent’s memorandum of law, at 7.

. Matter of Natural Resources Defense Council v New York City Dept. of Sanitation (supra, at 221); see also, McKain v Koch (70 NY2d 109, 119-120 [1987]); New York City Coalition to End Lead Poisoning v Koch (138 Misc 2d 188 [Sup Ct, NY County 1987], wherein plaintiffs brought an action to compel the City of New York to enforce local and Federal statutes pertaining to lead poisoning, the court rejecting defendant’s motion to dismiss for nonjusticiability, voting, in part, that "[although the method of enforcement may be discretionary, enforcement is not” [supra, at 191-192]).

. Article 20 of the Tax Law imposes its cigarette tax on all cigarettes possessed in the State except those that New York is "without power” to tax. (Tax Law § 471 [1].)

. The syllabus summarizing the opinion of the Unites States Supreme Court in Department of Taxation & Fin. v Milhelm Attea & Bros. (512 US 61, supra) upholding the regulations here involved, describes as follows:
"Enrolled tribal members purchasing cigarettes on Indian reservations are exempt from a New York cigarette tax, but non-Indians making such purchases are not. Licensed agents precollect the tax by purchasing stamps and affixing them to cigarette packs in advance of their first sale. Determining that a large volume of unstamped cigarettes was being purchased by non-Indians on reservations, petitioner tax department enacted regulations imposing recordkeeping requirements and quantity limitations on cigarette wholesalers selling untaxed cigarettes to reservation Indians. As relevant here, the regulations set quotas on the quantity of untaxed cigarettes that wholesalers may sell to tribes and tribal retailers, and petitioner tax department must approve each such sale. Wholesalers must also ensure that a buyer holds a valid state tax exemption certificate, and must keep records of their tax-exempt sales, make monthly reports to petitioners, and, as licensed agents, precollect taxes on nonexempt sales. Respondent wholesalers are licensed by the Bureau of Indian Affairs to sell cigarettes to reservation Indians. They filed separate suits in state court alleging that the regulations were pre-empted by the federal Indian Trader Statutes. The trial court issued an injunction. Ultimately, the Appellate Division upheld the regulations, but the Court of Appeals reversed, distinguishing this Court’s decisions upholding taxes imposed on non-Indian purchasers of cigarettes, see Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation, 425 U.S. 463; Washington v. Confederated Tribes of Colville Reservation, 447 U.S. 134, on the ground that they involved regulating sales to non-Indian consumers whereas New York’s regulations applied to sales by non-Indian wholesalers to reservation Indians. The court concluded that the Indian Trader Statutes, as construed in Warren Trading Post Co. v. Arizona Tax Comm’n, 380 U.S. 685, deprived the States of all power to impose regulatory burdens on licensed Indian traders, and, alternatively, that if States could impose minimal burdens on the traders, New York’s regulations were invalid because the burdens were significant.
"Held: New York’s regulations do not, on their face, violate the Indian Trader Statutes. Pp. 69-78.”

. One wonders what respondents would do if petitioners failed to collect and pay over to the State of New York the taxes on tobacco products and motor fuel required of them by the Tax Law and the implementing regulations.

. Omitted for space considerations. Footnote deals with efforts being made to enforce the tax laws involved herein.

. The right of a Nation to purchase cigarettes and motor fuel from another Nation is not a sovereign right.

. See also, New York State Dept. of Taxation & Fin. v St. Regis Group and two companion cases: New York State Dept. of Taxation & Fin. v Stehlin; New York State Dept. of Taxation & Fin. v St. Regis Group, 217 AD2d 214 (1995).