In re Robert Charles **STRINGER** and **Bonnie Stringer, His Wife, Individually and D/B/A Stringer Trucking, Debtors.**

**Robert Charles Stringer and Bonnie Stringer D/B/A Stringer Trucking, Plaintiff,**

v.

**Pauline Chrysler Individually and D/B/A Randy's Smokeshop, Defendant.**

**Bankruptcy No. 98–10166. Adversary No. 00–1031.**

United States Bankruptcy Court, W.D. Pennsylvania.

April 5, 2001.

---

Michael S. JanJanin, Erie, PA.

John P. Bartolomei, Niagara Falls, NY.

Paul Chiaravalloti, Buffalo, NY.

## MEMORANDUM

WARREN W. BENTZ, Bankruptcy Judge.

Robert Charles Stringer and Bonnie Stringer, his wife, individually and d/b/a/ Stringer Trucking ("Debtor") filed its original COMPLAINT TO COMPEL TURNOVER OF PROPERTY OF THE ESTATE, PURSUANT TO 11 U.S.C. § 542 ("Complaint") on March 20, 2000. The Defendant, Pauline Chrysler individually and d/b/a Randy's Smokeshop ("Chrysler") filed a Motion to Dismiss the Complaint on the basis that this Court lacks jurisdiction because of the Debtor's property being on Native Nation Territory and Chrysler being a Native conducting business on Native Nation Territory.

By Memorandum and Order dated June 26, 2000, we determined that while an Indian *tribe* or *nation* may not be amenable to suit in the Bankruptcy Court, the sovereign immunity enjoyed by a *tribe* does not impair jurisdiction over *individual* tribe members when there is no allegation that the *individual* is an official of the tribe or that the operation of the individual's business was done in an official capacity for the tribe. *In re Stringer*, 252 B.R. 900 (Bankr.W.D.Pa.2000).

Debtor subsequently filed an Amended Complaint which adds a second Count.[1] Chrysler again filed a Motion to Dismiss the Amended Complaint which is identical to the initial Motion to Dismiss. Chrysler states that "[t]his jurisdictional motion to dismiss is brought again because since the Court's decision, there has been a decision by the New York State Supreme Court, Appellate Division, which would likely cause the Court to change its decision on jurisdiction," citing *New York Ass'n. of Convenience Stores v. Urbach*, 181 Misc.2d 589, 694 N.Y.S.2d 885 (N.Y.Sup.Ct.1999).

Initially, we note that the cited case was decided in July, 1999, long before our prior decision. The issue in *New York Ass'n. of Convenience Stores* case was "whether there is a rational basis to repeal the collection regulations and cease efforts to enforce the collection of tobacco product and motor fuel excise and sales taxes con-

---

1. In light of the testimony of Robert Stringer at a hearing held on January 24, 2001 and the documentation which Robert Stringer supplied to counsel, Debtors appropriately filed a Second Amended Complaint on April 3, 2001. We assume that Chrysler would raise the same Motion to Dismiss with regard to the Second Amended Complaint and therefore issue this Memorandum and Order.

nected to sales of such commodities by Indian retailers to non-Indian consumers." The issue did not concern the Court's jurisdiction over a tribe versus an individual member of the tribe. The Court stated that "Indian tribes have immunity from suit and cannot be sued to accomplish tax collection. This immunity extends to tribal retailers." There is no indication in the case that the tribal retailers in question were not doing business in an official capacity for the tribe.

We will continue to follow those cases cited in our prior Memorandum which hold that sovereign immunity of a *tribe* does not impair jurisdiction over *individual* tribe members who are not acting as representatives of the tribe and that tribe *members* are amenable to suit if the subject of the suit is not related to a tribe officer's performance of official duties. *In re Stringer*, 252 B.R. 900 (Bankr.W.D.Pa. 2000); *see also In re Diet Drugs, (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation; Brown v. American Home Products Corp.*, 2000 WL 1599259 (E.D.Pa. Oct.26, 2000). Certain Courts have taken the further step and determined that the bankruptcy court has jurisdiction over an Indian *tribe,* as in *Lower Brule Construction Co. v. Sheesley's Plumbing & Heating Co., Inc.*, 84 B.R. 638, 642–43 (D.S.D.1988):

> At least three bankruptcy courts have had occasion to decide similar questions of law relating to the jurisdiction of bankruptcy courts over Indian tribes. In *In re Sandmar Corp.*, a bankruptcy court first addressed the issue of whether a bankruptcy court has jurisdiction over an Indian tribe to find the Tribe in contempt for violating the automatic stay of section 362 of the Bankruptcy Code. 12 B.R. 910, 911–12 (Bankr. D.N.M.1981). The issue for determination was phrased as follows: "[W]hether,

in the absence of a statute which specifically limits that immunity, the Tribe's immunity is total or can be limited by other circumstances and, if so, is it limited here." 12 B.R. at 912. In holding that the tribe's sovereign immunity was limited, the court reasoned that an aspect of their sovereignty was implicitly preempted "as a necessary result of their dependent status." 12 B.R. at 913 (citing *Oliphant v. Suquamish (sic) Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978) and *United States v. Wheeler,* 435 U.S. 313, 315, 98 S.Ct. 1079, 1081, 55 L.Ed.2d 303 (1978)). The court went on to hold that the "real crux" of the matter was that allowing tribal courts to resolve bankruptcy cases involving non-Indians would be external to the Tribe's long-recognized authority over its internal relations. 12 B.R. at 914. In addition, the *Sandmar* court noted that tribal courts have no body of bankruptcy law to apply and permitting tribal courts to resolve bankruptcy matters would destroy the purpose of uniformity in administering the Bankruptcy Code. 12 B.R. at 915.

The opinion of the *Sandmar* court has been followed on one occasion. *See In re Shape,* 25 B.R. 356, 358–59 (Bankr. D.Mont.1982). In addition, in an adversary proceeding growing out of a contract dispute much like this case, a bankruptcy court has held that the bankruptcy court has jurisdiction over a corporation formed by an Indian tribe, reasoning only that *some* court must have jurisdiction to decide the dispute. *See In re Colegrove,* 9 B.R. 337, 339 (Bankr.N.D.Cal.1981).

While each of these decisions was decided before the Bankruptcy Amendments of 1984 and before the opinions of the United States Supreme Court in *LaPlante* and *Crow Tribe,* they nevertheless support the holding of the Court

that the bankruptcy court has jurisdiction to issue the interlocutory order in the adversary proceeding. *Sandmar* was decided when 28 U.S.C. § 1471 provided that bankruptcy courts had original but not exclusive jurisdiction of all civil proceedings arising under Title 11. In providing that the U.S. district courts shall now have this grant of jurisdiction, the 1984 amendments strengthen the implication that Congress intended U.S. district courts, rather than Indian tribal courts to assume a greater role in the administration of the Bankruptcy Code.

We find that we have jurisdiction over Chrysler. An appropriate Order will be entered.

### ORDER

This _____ day of April, 2001, in accordance with the accompanying Memorandum, it shall be, and hereby is, ORDERED as follows:

1. The second Motion to Dismiss filed by Pauline Chrysler, individually and d/b/a Randy's Smokeshop ("Chrysler") is REFUSED.

2. This Court has jurisdiction over Chrysler.

3. To the extent that leave of Court is required for the filing of the Second Amended Complaint, such leave is granted.

4. Chrysler shall file an Answer to the Second Amended Complaint within 20 days.

5. A pretrial conference is fixed for May 7, 2001 at 11:00 a.m. in the Bankruptcy Courtroom, 717 State Street, 7th Floor, Erie, Pennsylvania. Only 15 minutes have been reserved on the Court's calendar; no witnesses will be heard. Any party may participate by telephone pursuant to the attached instructions.

6. Chrysler may file a proof of claim which asserts a Chapter 11 administrative claim for amounts claimed due, if any, from the Debtor on account of transactions which occurred during the pendency of the Debtor's Chapter 11 case.

7. Debtor shall promptly raise any objection that it has to Chrysler's proof of claim so that the amount owed, if disputed, can be determined.

